**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALANA MARIE SOUZA a/k/a ALANA CAMPOS, BROOKE JOHNSON a/k/a BROOKE TAYLOR, CIELO JEAN GIBSON a/k/a CJ GIBSON, CLAUDIA SAMPEDRO, EVA PEPAJ, JAIME EDMONDSON-LONGORIA a/k/a JAIME LONGORIA, JAMILLETTE GAXIOLA, LAURIE YOUNG a/k/a LAURIE ROMEO, LUCY PINDER, and MASHA LUND a/k/a MALU LUND, | Case No. |
| Plaintiffs, | |
| - against - | |
| CONTROVERSY, LLC and MARK LATORRE, | |
| Defendants. | |

Plaintiffs ALANA MARIE SOUZA a/k/a ALANA CAMPOS, BROOKE JOHNSON a/k/a BROOKE TAYLOR, CIELO JEAN GIBSON a/k/a CJ GIBSON, CLAUDIA SAMPEDRO, EVA PEPAJ, JAIME EDMONDSON-LONGORIA a/k/a JAIME LONGORIA, JAMILLETTE GAXIOLA, LAURIE YOUNG a/k/a LAURIE ROMEO, LUCY PINDER, and MASHA LUND a/k/a MALU LUND (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendants CONTROVERSY, LLC d/b/a CLUB CONTROVERSY and MARK LATORRE (collectively "Defendants") respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, Club

1

Controversy located in Pittsburgh, Pennsylvania ("Controversy" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Pennsylvania's statutory right of publicity, 42 Pa. Cons. Stat. § 8316; d) violation of the Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1-201-9.2; e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant CONTROVERSY, LLC is a corporation formed under the laws of the state of Pennsylvania, with its principal place of business located at 1635 West Carson Street, Pittsburgh, Pennsylvania, 15219. CONTROVERSY, LLC operates Club Controversy, which is located at 1635 West Carson

Street, Pittsburgh, Pennsylvania, 15219.

7.     Venue is proper in the United States District Court for the Western District of Pennsylvania because Pittsburgh, Pennsylvania is Defendants' principal place of business.

8.     A significant portion of the alleged causes of action arose and accrued in Pittsburgh, Pennsylvania and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Pittsburgh, Pennsylvania.

## PARTIES

*Plaintiffs*

9.     Plaintiff Alana Marie Souza a/k/a Alana Campos ("Campos") is a well-known professional model, and a resident of Los Angeles County, California.

10.     Plaintiff Brooke Johnson a/k/a Brooke Taylor ("Taylor") is a well-known professional model, and a resident of Santa Barbara County, California.

11.     Plaintiff Cielo Jean Gibson a/k/a CJ Gibson (Gibson) is a well-known professional model, and a resident of Hillsborough County, Florida.

12.     Plaintiff, Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

13.     Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Jaime Edmondson-Longoria a/k/a Jaime Longoria ("Longoria") is a well-known professional model, and a resident of Pinellas County, Florida.

15.     Plaintiff Jamillette Gaxiola ("Gaxiola") is a well-known professional model, and a resident of Clark County, Nevada.

16.     Plaintiff Laurie Young a/k/a Laurie Romeo ("Young") is a well-known

professional model, and a resident of Orange County, California.

17.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of Winchester. England.

18.     Plaintiff Masha Lund (a/k/a Malu Lund) ("Lund") is a well-known professional model, and a resident of New York County, New York.

*Defendants*

19.     According to publicly available records, defendant CONTROVERSY, LLC is formed under the laws of the state of Pennsylvania.  During times relevant to this action, CONTROVERSY, LLC operated Controversy in Pittsburgh, Pennsylvania.

20.     According to publicly available records and upon information and belief, MARK LATORRE, in his capacity as the principal, owner and/or CEO of CONTROVERSY, LLC, maintains operational control over Controversy, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

21.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

22.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

23.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were

otherwise associated or affiliated with Club Controversy.

24.     In the case of every Plaintiff, such appearance was false.

25.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

26.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

27.     Alana Marie Souza a/k/a Alana Campos is a Brazilian model who started working as a model when she was only fifteen years of age. Ms. Campos was scouted by the director of Ford Models, which became her agency for five years. While she was nominated in numerous beauty pageants in her country, she decided to move to the United States at twenty years of age, where she is still currently represented by Wilhelmina Models. Ms. Campos has been published in Playboy, Astonish Mag, Viva Glam, and Bliss Mag. She has also been in many campaigns such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar, and appeared as a spokes model for My Body Journey and as a cover girl for Arizona Foothills Magazine. In addition, Ms. Campos was featured in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman, and Michael Douglas.

28.     That we know of, Campos is depicted in the photos in Exhibit "A" to promote Club Controversy on its Instagram on its page. This Image was intentionally altered to make it

appear that Campos was either a stripper working at Club Controversy, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

29.     Campos has never been employed at Club Controversy, has never been hired to endorse Club Controversy, has never been otherwise associated or affiliated with Club Controversy, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30.     Brooke Johnson a/k/a Brooke Taylor is a world-renowned model who has appeared in magazines such as FHM, Maxim, Viva Glam, and Stuff. She has also appeared in commercials and billboards such as Fredrick's of Hollywood, Coors Light, and Budweiser. In addition, Ms. Johnson has also been featured in countless other catalogs, billboards, television commercials and shows.

31.     That we know of, Taylor is depicted in the photos in Exhibit "B" to promote Club Controversy on its website and Facebook page. These Images were intentionally altered to make it appear that Taylor was either a stripper working at Club Controversy that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

32.     Taylor has never been employed at Club Controversy, has never been hired to endorse Club Controversy, has never been otherwise associated or affiliated with Club Controversy, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.     Cielo Jean Gibson a/k/a CJ Gibson is an American model who enjoys great success in her industry. Ms. Gibson was the Import Tuner magazine Model Search winner. Ms. Gibson is currently a model for the Falken Drift Team, and can be seen at Formula Drift events. Ms. Gibson has also appeared in several magazines including FHM, American Curves (as a

cover model), Supreme, MuscleMag International, Muscle & Fitness, Teeze, and in a Bowflex ad. Ms. Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Ms. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Ms. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

34.     That we know of, Gibson is depicted in the photos in Exhibit "C" to promote Club Controversy on its website, Twitter and Facebook pages. This Image was intentionally altered to make it appear that Gibson was either a stripper working at Club Controversy that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

35.     Gibson has never been employed at Club Controversy, has never been hired to endorse Club Controversy, has never been otherwise associated or affiliated with Club Controversy, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.     Claudia Sampedro is a Cuban born model, mother and spokeswoman. Ms. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Ms. Sampedro has appeared in many catalogues, magazine editorials and has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Ms. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Ms. Sampedro is in a Social Media Influencers top class with close to a million Instagram followers and a further combined half million fans on Facebook and Twitter. Ms. Sampedro is engaged to and has a baby with Green Bay's star defensive end Julius Peppers.

37.     That we know of, Sampedro is depicted in the photos in Exhibit "D" to promote Club Controversy on its Twitter, Facebook, and Instagram page. These Images were intentionally altered to make it appear that Sampedro was either a stripper working at Club Controversy that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

38.     Sampedro has never been employed at Club Controversy, has never been hired to endorse Club Controversy, has never been otherwise associated or affiliated with Club. Controversy, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.     Eva Pepaj is a successful model and actress who moved to Hollywood in 2004 to pursue her acting and modeling career. She is known for her roles in the movies: The Hand Off (2009), Interior, Leather Bar, (2013) and The Romp (2011). Eva was a feature in a national Diet Coke TV commercial. Eva is a professional model working model and actress and her work includes from runways to high fashion, to print and film.

40.     That we know of, Pepaj is depicted in the photos in Exhibit "E" to promote Club Controversy on its website, Twitter, and Facebook pages. This Image was intentionally altered to make it appear that Pepaj was either a stripper working at Club Controversy that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

41.     Pepaj has never been employed at Club Controversy, has never been hired to endorse Club Controversy, has never been otherwise associated or affiliated with Club Controversy, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.     Jaime Edmondson-Longoria a/k/a Jaime Longoria comes from a family of police officers. Ms. Edmondson graduated from Florida Atlantic University with a degree in Criminal

Justice in 2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting the police force to become a cheerleader for the Miami Dolphins. Ms. Edmondson and fellow Miami Dolphins cheerleader Cara Rosenthal were participants in the competitive reality TV series "The Amazing Race 14." Ms. Edmondson was the Playmate of the Month in the January 2010 issue of "Playboy." She has been a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Aint No Love Song" and numerous other television, print, radio and online outlets. Ms. Edmondson and her fiancée, MLB Superstar Evan Longoria MLB superstar, have 2 children

43.     That we know of, Longoria is depicted in the photos in Exhibit "F" to promote Club Controversy on its website and Facebook page. This Image was intentionally altered to make it appear that Longoria was either a stripper working at Club Controversy that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

44.     Longoria has never been employed at Club Controversy, has never been hired to endorse Club Controversy, has never been otherwise associated or affiliated with Club Controversy, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45.     Jamillette Gaxiola began her career as a teenager. She was spotted by a modeling agent at a fast-food restaurant, and after some initial resistance, the teenage beauty decided to try modeling. She became Miss Cuba at the age of 18, and quickly became popular among fashion designers and magazines. She is active in a number of social and charitable causes, and one of her personal missions has been to help young women deal with self-esteem issues. In a small period of time, she has possessed the work ethic and dedication to transition between Beauty,

Fashion, TV, and is now a Sports Personality representing the UFC. She has worked for designer brands such as Reebok, Hurley, Guess Jeans, Victoria Secret, Nike, MAC Cosmetics, Roberto Cavalli, Naeem Khan, Paul Marciano, Fendi, Saks Fifth Avenue and Niemen Marcus. She is also the current face of UFC. Her beauty pageants consist of Miss Cuba Grand International, and Miss Cuba International. Gaxiola's magazine highlights include those of GQ Magazine, Maxim Australia, Open Magazine, and Esquire.

46.    That we know of, Gaxiola is depicted in the photos in Exhibit "G" to promote Club Controversy on its website, Twitter, and Facebook pages. These Images were intentionally altered to make it appear that Gaxiola was either a stripper working at Club Controversy that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

47.    Gaxiola has never been employed at Club Controversy, has never been hired to endorse Club Controversy, has never been otherwise associated or affiliated with Club Controversy, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

48.    Laurie Young a/k/a Laurie Romeo may not be "the girl next door" but she is certainly the all California, bikini wearing, sun worshipping, beach girl. Ms. Young grew up on the Southern Californian coastline and did all the Californian things. Ms. Young was a cheerleader since the age of seven and continued through High School and beyond to competition and coaching juniors. Ms. Young's modeling and acting career has been achieved by natural growth and development from virtually being offered continual work while being on the beach or cheerleading. In the last few years things got a lot more hectic and serious with bigger jobs, parts on major TV series and magazine shoots. Ms. Young has contract work with Shirley's of Hollywood, is an ambassador and cheerleader for the NHRA drag racing series, shot the cover

10

and is the 2015 Kandy Magazine model of the year and has done a number of TV commercials. The most famous one being the Late Night spokeswoman for Adam and Eve products that has become a bit of a cult favorite.

49.     That we know of, Young is depicted in the photo in Exhibit "H" to promote Club Controversy on its Facebook page. This Image was intentionally altered to make it appear that Young was either a stripper working at Club Controversy that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

50.     Young has never been employed at Club Controversy, has never been hired to endorse Club Controversy, has never been otherwise associated or affiliated with Club Controversy, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51.     Lucy Pinder is an English model, actress, host, businesswoman and one of Great Britain's most famous glamour models. Ms. Pinder has featured in publications such as FHM, Nuts, Loaded and the Daily Star, and hundreds of others. Ms. Pinder has appeared on FHM's list of the "100 Sexiest Women in the World" in 2005, 2006 and 2007. Ms. Pinder was a guest columnist in Nuts, entitled "The Truth About Women" and appeared on the final edition of Nuts magazine cover. Ms. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) and others, and on large national and international advertising campaigns. Ms. Pinder has an established and developing acting career with many TV appearances and Film credits. Ms. Pinder has appeared on shows such as I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, and Team and Bo! in the USA. Ms. Pinder was also a contestant on Celebrity Big Brother. Ms. Pinder had starring roles in films such as The Seventeenth Kind, Age of Kill, and Warrior

Savitri. Ms. Pinder works closely with a number of Wildlife charities and is involved in fundraising for 'Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue". Ms. Pinder has also worked with Help for Heroes appearing in the Hots Shots fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Ms. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Ms. Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram and Twitter.

52.     That we know of, Pinder is depicted in the photos in Exhibit "I" to promote Club Controversy on its website, Twitter, Facebook, and Instagram pages. These Images were intentionally altered to make it appear that Pinder was either a stripper working at Club Controversy that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

53.     Pinder has never been employed at Club Controversy, has never been hired to endorse Club Controversy, has never been otherwise associated or affiliated with Club Controversy, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

54.     Masha Lund a/k/a Malu Lund is a famous Danish/Russian model, actress and designer. Malu started modeling when she was just a baby, and after finishing business college, she got sponsored in the United States to model. She landed big ads for Rockstar Energy Drinks billboards that were in 20 cities all over the U.S., several covers in FHM, Maxim, and People Magazine; and was named one of the "Sexiest Women in the World" by FHM. As she continued modeling and acting, she was featured in movies with Jack Black and Tenacious D in The Pick

of Destiny, and Epic Movie with Carmen Electra. She was featured in music videos for Eminem,

Lady Gaga, and many other big names. She also was a spokesmodel for several brands including,

Dreamgirl Lingerie clothing company for eight years, and was featured on more billboards for

138 Water Company on Sunset Drive in Los Angeles. In 2010, she starred in a popular Danish

reality show about career women from Denmark "living the dream" in Los Angeles, called

Danske Hollywood Fruer. Besides modeling and acting, she studied fashion, art and interior

design. She is also working on her own pet clothing line. Malu is also an interior decorator,

blogger, and endorser for several beauty companies.

     55.     That we know of, Lund is depicted in the photo in Exhibit "J" to promote Club

Controversy on its Facebook page. This Image was intentionally altered to make it appear that

Lund was either a stripper working at Club Controversy that she endorsed the Club, or that she

was otherwise associated or affiliated with the Club.

     56.     Lund has never been employed at Club Controversy, has never been hired to

endorse Club Controversy, has never been otherwise associated or affiliated with Club

Controversy, has received no remuneration for Defendants' unauthorized use of her Image, and

has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

     57.     Upon information and belief, Defendants operated, during the relevant time

period, Club Controversy, where they engaged in the business of selling alcohol and food in an

atmosphere were nude and/or semi-nude women entertain the business' clientele.

     58.     Upon information and belief, and in furtherance of its promotion their promotion

of Club Controversy, Defendants own, operate and control the Club Controversy social media

accounts, including its Facebook, Twitter, and Instagram accounts.

13

59.     Defendants used the Club Controversy's Facebook, Twitter, and Instagram accounts to promote Club Controversy, and to attract patrons thereto.

60.     Defendants did this for their own commercial and financial benefit.

61.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper working at Club Controversy, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

62.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Club Controversy to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

63.     As Defendants were at all times aware, at no point have any of the above named Plaintiffs ever been affiliated with or employed by Club Controversy and at no point have any of the Plaintiffs ever endorsed Club Controversy, or otherwise been affiliated or associated with Club Controversy.

64.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

65.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

66.     It is common knowledge in the modeling industry that the hiring of a model for a

14

commercial purpose involves a particularized methodology and process.

67.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendants' Misappropriation of Plaintiffs' Images*

68.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Club Controversy by and through various marketing and promotional mediums including, without limitation, Club Controversy's website, Twitter, Facebook, and Instagram.

69.     Defendants showcased Plaintiffs' Images on Club Controversy's social media pages to create the false impression that Plaintiffs worked at Club Controversy, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

70.     Defendants did so to attract clientele to Club Controversy, promote Club Controversy, and thereby generate revenue for Defendants.

71.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Club Controversy.

72.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed

relating to the commercialization of their Images.

73.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

74.     This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers, endorse a strip club, or are otherwise associated or affiliated with a strip club.

75.     At no point were any of the Plaintiffs ever affiliated with Club Controversy, or Defendants.

76.     Each of Plaintiffs' Images was used without her consent.

77.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

78.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

79.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Club Controversy website, Twitter, Facebook, or Instagram accounts.

80.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

81.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

### FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

82.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

83.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to
Defendants, and protect Plaintiffs from the conduct described hereon.

84.     As set forth hereon, each advertisement at issue in this action were false and
misleading because no Plaintiff ever worked at Club Controversy, or agreed to appear in Club
Controversy's advertisements.

85.     Given the false and misleading nature of the advertisements, they had the capacity
to deceive consumers and, upon information and belief, did so deceive consumers.

86.     Upon information and belief, said deceptive advertisements had a material effect
on the purchasing decisions of consumers who attended Club Controversy.

87.     Insofar as Defendants' published these false and misleading advertisements on the
internet, they had the capacity to affect interstate commerce, and, upon information and belief,
did so affect interstate commerce.

88.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither
worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to
mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

89.     Defendants knew that their use of Plaintiffs' Images would cause consumer
confusion as to Plaintiffs' sponsorship and/or employment at the Club.

90.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact
cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and
the goods and services provided by the Club.

91.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false
advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an
amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

92.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

93.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

94.     Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Club Controversy, or worked at, sponsored, or approved of Club Controversy's goods, services or commercial activities.

95.     This was done to promote and attract clientele to Club Controversy, and thereby generate revenue for the Defendants.

96.     Thus, this was done in furtherance of Defendants' commercial benefit.

97.     Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Club Controversy, nor worked at, sponsored, or approved of Club Controversy's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Club Controversy.

98.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

99.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and

the goods and services provided by the Club.

100.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false

endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an

amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**
**(Right of Privacy)**

101.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

102.     As set forth hereon, Defendants have violated each Plaintiff's common law right

to privacy under Pennsylvania law.

103.     Defendants have done so by appropriating each Plaintiff's likeness for

commercial purposes without authority or consent.

104.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their

likeness by publishing their Images on Club Controversy's website or related social media

accounts as part of Defendants' advertising campaign.

105.     At all relevant times, the Club Controversy's website and social media accounts

were used and operated by Defendants for advertising and trade purposes.

106.     Club Controversy's website and social media accounts were designed to attract

business to the Club and generate revenue for Defendants.

107.     Plaintiffs are informed and believe and hereon allege that the manner in which

Defendants posted and publicized their image and likeness in a manner that was hidden,

inherently undiscoverable, or inherently unknowable, in that Defendants published their image

and likeness on social media threads that, over time, are (for example, but not limited to)

"pushed" down in time from immediate visibility.

19

108.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

109.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

110.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Club Controversy.

111.    At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

112.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

113.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

114.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

### FOURTH CAUSE OF ACTION
**(Right of Publicity, Unauthorized Use of Name or Likeness: 42 Pa. Cons. Stat. § 8316)**

115.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

116.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

117.    Said commercial interest was developed by each Plaintiff through her investment

of time, effort and money in her career, image, persona and likeness.

118.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Club Controversy advertising.

119.    Defendants did so without any Plaintiff's consent, written or otherwise.

120.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

121.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

122.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

123.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

124.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**FIFTH CAUSE OF ACTION**
**(Common Law Right of Publicity)**

125.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

126.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

127.    Said commercial interest was developed by each Plaintiff through her investment

of time, effort and money in her career, image, persona and likeness.

128.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Club Controversy advertising.

129.    Defendants did so without any Plaintiff's consent, written or otherwise.

130.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

131.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

132.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

133.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

134.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

135.    In addition, because Defendants' actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.


### SIXTH CAUSE OF ACTION
#### (Defamation)

136.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

137.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

138.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

139.    None of these representations were true.

140.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club, or endorsed the Club.

141.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

142.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

143.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

144.    Defendants' publication of Plaintiffs' Images constitutes defamation under Pennsylvania law because said publication falsely accuses Plaintiff of having acted in a manner –

*i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

145.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Pennsylvania law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

146.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

147.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Pennsylvania law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

148.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## EIGHTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

154.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for

promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

156.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

157.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

158.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

159.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

160.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

161.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

162.     As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Conversion)

163.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

164.     Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

165.     By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

166.     As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Unjust Enrichment)

167.     Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

168.     As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

169.     Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

170.     Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

171.     Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

172.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

173.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

174.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Quantum Meruit)

175.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

176.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

177.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

178.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

179.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against

Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first

through tenth causes of action;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to

promote the Club;

(c)  For punitive damages, in an amount to be determined at trial, based on Defendants'

misappropriation of Plaintiffs' publicity and property rights;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action

pursuant to the Lanham Act, 15 U.S.C.§ 1117; and,

(e)  For such other and further relief as the Court may deem just and proper.

6/13/19


Respectfully submitted,

s/Louis J. Kroeck
**Attorney for Plaintiff**

Louis J. Kroeck
PA ID No. 210045
Lou@Ljk-law.com

12th Floor, Park Building
355 Fifth Avenue
Pittsburgh, PA 15222
412-712-7605


and


_/s John Golaszewski
John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@casaslawfirm.com
*Pro Hac Vice Application Forthcoming*